STATE OF CONNECTICUT *v.* ANNE H. LILLIS

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CR 3-2568

Argued March 16—decided June 8, 1964

*Harry Cohen,* of New Milford, for the appellant (defendant).

*Howard J. Moraghan,* assistant prosecuting attorney, for the appellee (state).

PRUYN, J. The sole issue raised by this appeal is whether upon all the facts the defendant's constitu-

tional right to counsel had been violated. The defendant seeks correction of the finding by striking out many of the facts found and incorporating additional facts. The testimony at the trial was to a great extent conflicting. The trial court heard the witnesses and observed them on the witness stand. It is one of its functions to assess the credibility of the witnesses, to believe or disbelieve the whole or any part of the testimony of a witness, and to give to it whatever weight the court believes is due it. We cannot review the court's decision in this respect. The defendant is in effect seeking to substitute her version of the facts, based on conflicting evidence. We cannot retry the case. The trial court's decision on disputed issues of fact is final. We must therefore take the facts as found.

On September 24, 1963, between 7 p.m. and 7:30 p.m., the defendant and her husband, Joseph Lillis, were observed leaving the premises known as 120 Grove Street, New Milford; Joseph got into his car and drove into a private driveway preparatory to turning it around; the defendant got into her car and drove it directly to the rear of her husband's car and then drove it against the rear of her husband's car, striking it at least three times. The defendant was yelling and doing a lot of loud talking. Then she drove down Grove Street. Shortly afterwards, she returned and stopped her car in front of the home of her brother-in-law, Laurence Lillis, at 120 Grove Street, New Milford. Her brother-in-law drove up in his car and both he and she alighted from their respective cars. The defendant then made some accusations concerning her brother-in-law and took off her shoe and made a swipe at him, striking him; he said and did nothing except that he took the shoe away from her. There was considerable loud talking by the defendant, and she was extremely excited. At about 7 p.m. on the

same day, a New Milford constable and a state policeman were called to investigate a disturbance on Grove Street; finding none, they proceeded to a parking lot adjacent to the funeral home owned by the defendant's husband on South Main Street, New Milford. At about 7:15 p.m., the defendant drove into the parking lot and got out of her car, wearing only one shoe; she appeared to be quite upset and in an excited state; she was foaming at the mouth. She told her grievances to the officers. Her husband then came out of the funeral home and tried to talk to her but she shouted him down and he went back into the funeral home. The defendant's voice was very loud and she was screaming and while in the parking lot threatened to commit suicide. Her actions caused a crowd to gather on the street and around the parking lot. The police officers tried to calm her. She was asked to get into the state policeman's cruiser but refused to do so.

The state policeman then informed the defendant that she was under arrest for breach of the peace and ordered her into the cruiser. She refused; he took her arm; she fought with him; he asked the constable for help in making the arrest; handcuffs were then put on her. She was taken to the New Milford police station, arriving at about 7:25 p.m. On arrival the defendant was hysterical, extremely nervous, emotionally upset, and out of control. A policewoman arrived within twenty minutes thereafter. About fifteen minutes after her arrival at the police station, the defendant asked for permission to telephone a lawyer in Danbury and also a doctor and some of her relatives and friends. She was denied the use of the telephone because of her physical and mental condition. The town health officer was called; he was not the defendant's physician. On commitment papers signed by him she was taken, shortly after 8 p.m. on the same day,

by the state police officer to the Fairfield Hills State Hospital in Newtown. From the time of the denial to the defendant of the use of the telephone until her removal to the hospital nothing was done, said or written by the defendant relating to the offenses with which she was charged at the trial. The warrant was issued on September 30, 1963, and served on the defendant on October 14, 1963. The charge of breach of the peace had been placed against her on September 24, 1963, at the parking lot; the charge of resisting an officer was subsequently added by the prosecuting attorney.

From the foregoing facts the trial court concluded that because of the defendant's physical and mental condition she was unable and unfit properly to communicate and use a telephone and that the denial to her of the use of a telephone to call counsel in no way affected or prejudiced her defense at the trial, did not infect her subsequent trial so that it lacked that fundamental fairness essential to the very concept of justice, and was not violative of her constitutional rights.

We are concerned here only with the right to counsel. The denial of the use of the telephone to call a doctor, relatives and friends does not infringe upon any right guaranteed by the constitution.

In *State* v. *Krozel*, 24 Conn. Sup. 266, we had occasion to consider the entire problem of the right to counsel guaranteed by the United States and Connecticut constitutions, and after reviewing the authorities in great detail we concluded (p. 274) that at the point in the pretrial proceedings when the interrogation of the accused has been concluded and all the reasonable demands of the police have been satisfied the accused is entitled to counsel. We reversed the conviction because the proceedings had reached that point, the charge against the

accused had been made out, and he had been denied the use of the telephone, though he was capable of using it. See also *State* v. *Morrocco,* 2 Conn. Cir. Ct. 568, 576. We appreciate the difficulty of delineating a definite line dividing the rights of the accused and proper police procedures in investigating crime.

In the case before us, the situation differs from that in the *Krozel* case, supra. Here the defendant was in such a hysterical, emotional and out-of-control mental and physical state that she was incapable of using the telephone; she threatened suicide; the police officers tried unsuccessfully to calm her and then called a doctor; within less than an hour after her arrival at the police station she was taken to the hospital. During the short interval of time after the denial of her request to use the telephone to call a lawyer, she said, did and wrote nothing concerning the offenses charged. The record clearly indicates that because of her condition she was in dire need of immediate medical attention and was incapable of using the telephone. There is nothing in the record to show that the police had interrogated her or had terminated any interrogation of her or that the reasonable demands of the police had been concluded. Upon the facts of this case, we cannot say that the trial court's conclusions were erroneous.

There is no error.

In this opinion DEARINGTON and JACOBS, Js., concurred.